OPINION
Defendant-appellant Robert Diehl appeals from the July 17, 2000, Judgment Entry of the Stark County Court of Common Pleas, Domestic Relations Division.
STATEMENT OF THE FACTS AND CASE, Appellant Robert Diehl and appellee Joan Diehl were married on October 4, 1986. Two children were born as issue of such marriage, to-wit: Jonathan R. Diehl (DOB 10/3/93) and Elizabeth Kay Diehl (DOB 5/9/95). On April 9, 1999, appellee filed a Complaint for Divorce and a Motion for Temporary Orders in the Stark County Court of Common Pleas, Domestic Relations Division. An Answer, Counterclaim and Motion for Temporary Orders were filed by appellant on April 21, 1999. Following a temporary motion hearing held on April 28, 1999, appellant was ordered to pay temporary spousal support in the amount of $1,200.00 per month and to pay child support in the amount of $484.37 per month per child. In addition, appellant was granted visitation one day a week for a twenty four hour period. The April 29, 1999, Judgment Entry stated that appellant was to notify appellee prior to 5:00 p.m. of the day preceding the day for visitation. Subsequently, a final hearing was held in this matter on March 22, 2000, before a Magistrate. Appellant, who was represented by counsel, was not present at such hearing since he was working out of town. Pursuant to a Magistrate's Decision filed on March 27, 2000, and approved and adopted by the trial court, the trial court granted appellee a divorce and dismissed appellant's counterclaim for failure to prosecute. The Magistrate, in his decision, ordered appellee's counsel to submit the final entry. Thereafter, a Final Entry and Judgment of Divorce was filed on the same day. The trial court, in its final entry, ordered appellant to pay spousal support to appellee in the amount of $1,200.00 per month for a period of five years and to pay child support in the amount of $484.00 per month per child plus poundage. The trial court also ordered that appellant would have no companionship with the parties' minor children until appellant had successfully completed counseling, including counseling with the children, with a licensed psychologist. Appellant, on April 5, 2000, filed an objection to the Magistrate's March 27, 2000, Decision, arguing that it was "contrary to law and against the manifest weight of the evidence. . ." Following a July 10, 2000, hearing on the objections, the trial court, pursuant to a Judgment Entry filed on July 17, 2000, overruled appellant's objection and approved and adopted the Magistrate's Decision. It is from the trial court's July 17, 2000, Judgment Entry that appellant now prosecutes his appeal, raising the following assignments of error:
 I THE TRIAL COURT FAILED TO AWARD A REASONABLE AMOUNT OF SPOUSAL SUPPORT.
 II THE TRIAL COURT FAILED TO CONSIDER ALL OF THE PARTIES' PROPERTY.
 III THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT COMPANIONSHIP WITH THE PARTIES' MINOR CHILDREN.
 I
Appellant, in his first assignment of error, argues that the trial court abused its discretion by awarding an unreasonable amount of spousal support. Appellant in the case sub judice specifically contends that the trial court's award of spousal support in the amount of $1,200.00 a month to appellee for a period of five years was unreasonable "in relationship to the Appellant's income, child support and meager living expenses." We, however, disagree. A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Ohio Revised Code sections 3105.18(C)(1)(a) thru (n), provide the factors that a trial court is to review in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support. R.C. 3105.18 states, in relevant part, as follows: (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (I) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities (n) Any other factor that the court expressly finds to be relevant and equitable.
As is stated above, appellant was not present at the final hearing, which was held in this matter on March 22, 2000. Testimony was adduced at such hearing that appellant, who is employed as a boilermaker, earned $66,948.00 in 1997, and $64,800.00 in 1998. Appellee testified that appellant had flexibility in his job and could work as little or as much as he chose. According to appellee, appellant was able to take several months off from work each year. In contrast, appellee, who has a degree in accounting, has not been employed since 1993. Appellee testified that, during the early years of their over thirteen year marriage, appellee supported appellant while he went back to school full-time. After appellant graduated from college, appellee was forced to quit two different jobs in order to follow her husband. Once the parties' two children were born, appellant was "adamant" that he did not want appellee working and told appellee that if she went back to work, he "would quit working and he would stay home with the kids." Transcript of March 22, 2000, hearing at 11. While, as is stated above, appellee has a degree in accounting, appellee testified that she has been unable to find employment that pays more than nine dollars an hour. According to appellee, during the years that she has been out of the work force, the accounting software has changed drastically. Since she is unfamiliar with the current computer software, appellee has been significantly hampered in her ability to find employment. While a local accounting agency was able to find appellee a job paying nine dollars an hour, appellee testified that she "would pay more in child care and taxes and taking care of everything and going to work forty hours a week than staying home with my kids. . ." Transcript of March 22, 2000, hearing at 13. At the March 22, 2000, hearing, appellee submitted a list of reasonable and necessary monthly expenses totaling $3,079.00. Appellee was receiving a total of $968.74 ($484.37 x 2) in child support from appellant as of the date of the hearing. Based on the foregoing, we find that the trial court did not abuse its discretion in awarding spousal support to appellee in the amount of $1,200.00 per month for a period of five years. The trial court clearly considered the factors set forth in R.C. 3105.18(C) in determining spousal support. In view of the parties' over thirteen year marriage, the respective earnings (or lack thereof) of the parties, appellee's earning abilities, and appellee's sacrifices while appellant received his degree, we find that the trial court's decision is not arbitrary, unreasonable or unconscionable. While appellant argues that the trial court erred in refusing to take into consideration appellant's current income and expenses when determining spousal support, we do not agree. As is stated above, the trial court, in calculating spousal support, took into consideration appellant's 1997 and 1998 income. At the March 22, 2000, hearing in this matter, appellant's counsel attempted to introduce into evidence some 1999 W2s for appellant that had been faxed to him by appellant, but had never been seen by appellee, as well as business expense receipts. However, appellant's counsel admitted at the hearing that he could not guarantee that he had received all of appellant's 1999 W2s and that appellant had not faxed him receipts of appellant's business expenses. With respect to appellant's business expenses, appellant's counsel testified that he "figured them out. . . . by extrapolating them." Transcript of March 22, 1999, hearing at 62. Moreover, appellant himself was not present at the March, 2000, hearing for cross-examination as to his 1999 incomes and expenses. For the foregoing reasons, we find that the trial court did not abuse its discretion in refusing to use appellant's 1999 W2s and business expenses in calculating spousal support. Appellant's first assignment of error is, therefore, overruled.
 II
Appellant, in his second assignment of error, argues that the trial court erred in failing to divide all of the parties' marital property. Appellant specifically contends that the trial court failed to make "an ownership order or division" of an S Corporation called "Stafford and Winsor Publish House, Inc." that was listed in the parties' 1998 federal income tax return. At the March 22, 2000, hearing in the case sub judice, appellee testified that the parties' business was sold prior to the filing of the complaint for divorce. Since appellant did not appear at such hearing, appellee's testimony was uncontroverted. Since, as appellee notes in her brief, there is "absolutely no evidence of the continued existence of any "business" of the parties," appellant's second assignment of error is overruled.
 III
Appellant, in his third assignment of error, maintains that the trial court erred in failing to grant appellant companionship with the parties' two minor children. R.C. 3109.051(D) sets forth certain factors that the trial court shall consider for determining visitation or companionship matters. R.C. 3109.051 provides in pertinent part: (D) In determining whether to grant companionship or visitation rights to a parent, grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, in establishing a specific visitation schedule, and in determining other visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider all of the following factors:
(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity; * * * (2) The geographical location of the residence of each parent and the distance between those residences; * * * (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; * * * (4) The age of the child; (5) The child's adjustment to home, school, and community; (6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to visitation by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested the companionship or visitation, as to a specific visitation schedule, or as to other visitation matters, the wishes and concerns of the child, as expressed to the court; (7) The health and safety of the child; (8) The amount of time that will be available for the child to spend with siblings; (9) The mental and physical health of all parties; (10) Each parent's willingness to reschedule missed visitation and to facilitate the other parent's visitation rights, and if the person who requested companionship or visitation is not a parent, the willingness of that person to reschedule missed visitation; (11) In relation to visitation by a parent, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child; (12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child; (13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to visitation in accordance with an order of the court; (14) Whether either parent has established a residence or is planning to establish a residence outside this state; (15) Any other factor in the best interest of the child.
A trial court's decision regarding companionship will not be reversed absent an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142,144. An abuse of discretion implies the trial court's attitude was unreasonable, arbitrary or unconscionable. See Blakemore, supra. Contrary to appellant's assertion, the trial court in the case sub judice did grant appellant companionship with the parties' minor children provided that certain conditions were met. Specifically, the March 27, 2000, Final Entry and Judgment of Divorce states, in part, as follows: "Defendant [appellant] shall have no companionship with the children until the successful completion of counseling including counseling with the children. Counseling must be from a licensed psychologist (not social worker). The choice of the psychologist must be either by agreement of both parties or by appointment of the Court. No companionship between father and children may be had until the Court receives a letter from the agreed or approved licensed psychologist stating that Defendant has fully cooperated with counseling which counseling has included the children and recommending such companionship."
We find that the trial court did not abuse its discretion in awarding appellant companionship under the above conditions since such decision was not arbitrary, unreasonable or unconscionable. At the March 22, 2000, hearing, appellee testified that the parties' children had not seen appellant since April of 1999. While appellant did call once during such period of time, appellee testified that after the phone call, the couple's son was "very upset." Transcript of March 22, 2000, hearing at 20. Appellee further testified that during such period of time, appellee did not send Christmas or birthday gifts or cards or any other type of correspondence. When asked whether their lack of contact with their father was hard on the parties' children, appellee responded as follows: A. Um initially it was very difficult. Jonathan ripped off the wallpaper in his room. He punched through all of the screens on the screened porch. I am currently re-paneling seven screens. He was urinating on the carpet in the family room quite repeatedly because he was angry. He would urinate all over the toilets. He was very angry that daddy was gone and we have worked um I . . . I took him to psychologist for awhile to help him and um the psychologist feels that he's fine. He's doing very well. He's a happy adjusted little boy now. He's doing very well in school. He does great at church. He does great in his activities. He's a happy little boy. Q. Do you believe the children would be negatively affected if their father instantly re [sic] appeared in their lives? A. Absolutely. Elizabeth doesn't even know who he is. She doesn't even remember what he looks like and Jonathan doesn't remember because of ah last summer he cried about I don't remember daddy anymore. I don't remember how tall daddy is. I don't remember how I put my arms around daddy. Why doesn't daddy come to see me.
Transcript of March 22, 2000, hearing at 20-21. Appellee testified that she believed there needed to be some type of intervention with a counselor before appellant reappeared in the children's lives. Based on the foregoing, we find that although the trial court did not expressly address each of the above factors, the trial court clearly considered the factors set forth in R.C. 3109.051(D) in determining companionship/visitation, since evidence was presented at the March 22, 2000, hearing bearing on the same. We further find that the trial court's decision to award appellant companionship contingent on completion of counseling was not arbitrary, unreasonable or unconscionable. Completion of counseling is necessary to ensure that appellant's reintroduction to his young children after over a year absence is as stress free as possible. Appellant's third assignment of error is, therefore, overruled.
Accordingly, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed.
By Edwards, J. Gwin, P.J. and Wise, J. concurs